IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-01682-WYD

ACE J. ANGSTER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for Disability Insurance Benefits ["DIB"] and Supplemental Security Income ["SSI"] pursuant to Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-33 and 1381-83. For the reasons stated below, this case is reversed and remanded to the Commissioner for an immediate award of benefits.

II.    <u>BACKGROUND</u>

Plaintiff protectively filed applications for benefits on March 9, 2005, alleging an onset of disability since August 1, 2004. (Administrative Record ["R."] 30, 74-81.) The DIB application was denied for uninsured status. (*Id.* 88). The SSI application was denied initially for lack of disability. (*Id.* 48-50.)

Plaintiff timely requested a hearing (R. 47), which was held on June 7, 2006. At the hearing, Plaintiff alleged disability due to multiple impairments, including:

depression, anxiety, damaged tendons in his left hand, and back pain. (*Id.* 117, 327-330.) In a decision issued July 9, 2006, the ALJ denied Plaintiff's claim for benefits. (*Id.* 31-38.) More specifically, the ALJ found that Plaintiff retained the residual functional capacity ["RFC"] "to perform medium exertional work activity, with no non-exertional limitations." (*Id.* 36). He found at step five that there were a significant number of jobs that Plaintiff could perform, and he was thus not disabled. (*Id.* 38.)

Plaintiff requested review of the hearing decision by the Appeals Council (R. 63-65), which was granted on December 7, 2006. (*Id.* 39-42.) The Appeals Council found error with the ALJ's conclusion that Plaintiff did not have a severe mental impairment and remanded the case to the ALJ. (*Id.* 40). The Council ordered the ALJ to properly evaluate the treatment provider's April 2006 questionnaire, obtain additional evidence through a consultative exam, and give further consideration to Plaintiff's RFC with specific references to evidence of record. (*Id.* 40-41).

A subsequent hearing on Plaintiff's claim for benefits was held before the same ALJ on August 22, 2007. (R. 18, 339-353.) The ALJ did not obtain a consultative exam for this review, as ordered by the Appeals Council. In a decision issued October 10, 2007, the ALJ again denied Plaintiff's claim for benefits at step five. (*Id.* 15-27.)

More specifically, the ALJ concluded at step one that Plaintiff had not engaged in substantial gainful activity since March 9, 2005, the application date. (R. 20.) At step two, the ALJ determined that Plaintiff had severe impairments of "an affective disorder, anxiety, and degenerative disc disease of the lumbar spine". (*Id.*) Thus, he found in this decision that Plaintiff had severe mental impairments. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that

met or medically equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ then found that Plaintiff has the RFC "to perform light work except that he is limited to jobs with an SVP of 3 or less (and GED levels of 1, 2, or 3), and should not deal with the general public or have more than occasional contact with co-workers." (R. 21.) The ALJ did not cite any medical source opinion for the "light" RFC assessment. Instead, he supported this conclusion by giving weight "to the same sources referenced in [the prior] decision with respect to particular opinions regarding the claimant's physical abilities, although he is found to be more restricted, as is reflected in the RFC herein." (*Id.* 24.) The ALJ also stated that Plaintiff was given "the full benefit of the doubt in finding he is limited to light, rather than medium, work as found in the previous decision." (*Id.*).

At step four, the ALJ found that Plaintiff has no past relevant work, and also found that transferability of job skills is not an issue. (R. 25-26.) At step five, the ALJ found that considering Plaintiff's age (44 years old on the date of the alleged onset), education (high school equivalency), work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* 25-26.) In so finding, the ALJ relied on the testimony of a vocational expert who opined that a hypothetical person with the above characteristics would be able to perform the requirements of representative occupations such as assembler of small parts, collator operator, and a construction flagger. (*Id.* 26.) Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, since March 9, 2005, the date the application was filed. (*Id.* 27.)

Plaintiff again requested review of the hearing decision by the Appeals Council, (R. 14, 320-321), which was denied on June 6, 2008. (*Id.* 6-9.) Accordingly, the ALJ's decision became the final administrative decision and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

III.  ANALYSIS

    A.  Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

    B.  Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff argues that the ALJ's RFC finding is legally deficient and not supported by substantial evidence. He further argues that the Commissioner erred in rejecting the opinions of his treating providers and when evaluating the opinion of Dr. Benson, an

examining psychologist. Plaintiff requests that this case be remanded to the Commissioner with instructions to award benefits based on the fact that he does not retain the ability to perform work. Alternatively, he asserts that the Court should remand the case with instructions to properly evaluate the opinions in the case record, reassess the physical and mental residual functional capacity based on all of the evidence of record, and issue a new decision based on substantial evidence and proper legal standards. I now turn to the analysis.

        1.      <u>RFC as to Physical Impairments</u>

Plaintiff first asserts that the RFC regarding his physical impairments is not supported by substantial evidence. The ALJ found that Plaintiff was limited to light work "[b]ased on the occasional exacerbations of back pain and resulting limitations (though generally inducted by the claimant's own overexertion)." (R. 22.) Plaintiff argues that the ALJ's finding that he can perform light work is a mere conclusion, as the ALJ did not cite any medical evidence in the record that supported such a finding.

The ALJ referred to the evidence discussed in his prior decision for the medical evidence in support of his RFC. (R. 24.) However, he only noted in his prior decision that none of Plaintiff's physicians have opined that he has physical limitations. (*Id.* 36.) Plaintiff is correct that there is no evidence in the record to support the RFC finding because no physicians have specifically addressed or defined Plaintiff's exertional and nonexertional limitations related to his physical condition. The ALJ also relied on the fact that one doctor referred to Plaintiff as being "otherwise relatively healthy" in connection with a hernia surgery. (*Id.*) However, this is not substantial evidence on this issue since the treatment provider was not assessing Plaintiff's back condition. On the

other hand, there is evidence in the record from Plaintiff that he has limitations on sitting, standing and walking, needs to lay down after strenuous activity, and is significantly limited in daily activities, which the ALJ discounted. (*Id.* 328, 349, 24.) Further, the evidence shows that Plaintiff still experiences back pain. (*Id.* 22.)

I agree with Plaintiff that the ALJ erred in that the RFC was not linked to specific evidence in the record. *See Southard v. Barnhart*, 72 Fed. Appx. 781, 784-785 (10th Cir. 2003) ("finding error where the ALJ did not show how the evidence supported each finding in the RFC and the ALJ failed to cite "*specific* medical facts . . . and nonmedical evidence" which supported the RFC) (emphasis in original); *see also Brant v. Barnhart*, 506 F. Supp. 2d 476, 486 (D. Kan. 2007); *Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. Dec. 16, 2005). "[B]are conclusions are beyond meaningful judicial review." *Brant*, 506 F. Supp. 2d at 486.

The record was unclear on the issue of whether Plaintiff's back impairment and resulting pain resulted in any limitations (either exertional or nonexertional) that may impact Plaintiff's ability to work. Since Plaintiff was not working during his treatment, it is certainly arguable that the medical providers had no reason to assess limitations or impairments related to same. Under these circumstances, the ALJ probably should have ordered a consultative examination to determine what Plaintiff's actual physical RFC was. *See Barrett v. Astrue*, No. 08-2300, 2009 WL 2400267, at *4 (10th Cir. 2009) (consultative examinations are often required when there is "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation" but "the medical evidence in the record is inconclusive").

I also find that the ALJ failed to conduct a proper pain analysis. He discounted the medical evidence documenting chronic pain in Plaintiff's back due to the fact that Plaintiff was the primary caregiver for his children. (R. 24.) However, the fact that a person has to care for children does not necessarily mean that he or she is not in pain while doing so. This was an improper lay judgment that was not supported by any evidence. As noted by the Tenth Circuit, "'[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Further, this finding fails to take into account the fact that the evidence showed fairly limited daily activities.[1] Also, while the ALJ recites the appropriate factors to be considered, he failed to link his conclusions as to these factors to the evidence. *See Carpenter v. Chater*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("[t]he ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication").

The ALJ discounted the fact that Plaintiff's daily activities were limited on the basis that this could not be objectively verified. However, that is the situation in almost every case before the Social Security Administration and is not a basis to discount the

---

[1] The ALJ also discounted Plaintiff's pain on the basis that Plaintiff was involved in altercations frequently and that if he was in as much pain as described, he would avoid such incidents. (T. 22.) Again, this is a lay conclusion which assumes that Plaintiff was the one that started the altercations. Further, the altercations are not described; thus, it is impossible to determine how Plaintiff's pain may be impacted by those incidents.

evidence on this issue absent contrary evidence. The ALJ also discounted the limitations on daily activities on the basis that Plaintiff successfully cares for his children. Again, this is an improper lay judgment that is not linked to any evidence in the record. Plaintiff's children are school-aged (R. 24) and it is speculative to assume that they needed assistance from Plaintiff in a manner which would substantially impact his daily activities absent evidence on this issue in the record.

In conclusion, I find that the ALJ did not properly assess Plaintiff's pain and that the ALJ failed to support his finding that Plaintiff could perform light work with specific evidence in the record. Accordingly, I find that the ALJ's RFC assessment as to Plaintiff's physical impairments is not supported by substantial evidence.

2. RFC as to Mental Impairments

I now turn to Plaintiff's mental impairments. As noted above, the RFC on this issue limited Plaintiff to jobs with an SVP of 3 or less (and GED levels of 1, 2, or 3), and stated that Plaintiff should not deal with the general public or have more than occasional contact with co-workers. (R. 24-25.) The ALJ supported his mental RFC by an assessment from an examining psychologist, Dr. Benson (*id.* 247-260), rejecting some parts of the opinion and purportedly accepting others. (*Id.* 23-25.) The ALJ rejected the assessments from Plaintiff's treating nurse practitioner Patricia Head, F.N.P., and psychiatrist W. Lee McNabb. I find error with these findings.

I first address the opinions of the nurse practitioner and psychiatrist which were rejected. On May 10, 2005, Mr. Angster's nurse practitioner at Spanish Peaks Mental Health Center ("SPMHC"), Patricia Head, offered her opinion as to the severity of Plaintiff's symptoms in a Colorado Department of Human Services Initial Examination

form for the "Temporary Assistance for Needy Families" program. (R. 205-206). Ms. Head concluded that Plaintiff would have no work capacity due to his multiple mental impairments and resulting limitations, and further indicated the various limitations that would have to be addressed before he could return to work. These included decrease in depression, a marked decrease in anxiety in social situations, an increase in his ability to concentrate, and a decrease in his irritability. (*Id.* 206.)

The ALJ rejected this assessment for several improper reasons. First, he found that the report was "extremely conclusory as Ms. Head indicates that the claimant has 'no work capacity', but does not explain what this conclusion is based upon except increasing depression and anxiety." (R. 25.) However, increasing depression and anxiety, if severe enough, are certainly sufficient reasons for a medical provider to find that someone cannot work. Further, she gave specific reasons for her opinion, noting that for Plaintiff to be employable there would need to be a decrease in depression, anxiety in social situations and irritability and an increase in his ability to concentrate, and a decrease in his irritability, as noted above. (*Id.* 206.) Given her prior treatment of Plaintiff, she appeared to have a basis to make this assessment.

Second, the fact that Plaintiff no longer saw Ms. Head at the time of the report or that she may not be an acceptable medical source (R. 25) is of no consequence. The ALJ was still required to consider her opinions. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citing 20 C.F.R. § 416.927(d)) ("Regardless of its source, we will evaluate every medical opinion we receive"); SSR 96-5P, 1996 WL 374183, at *1 (1996) ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored").

Finally, the ALJ rejected Ms. Head's opinion in the form on the basis that the treatment notes are not suggestive of the mental restrictions described by Ms. Head and that the objective findings in the treatment notes do not corroborate her opinions. (R. 25.)  In support of that opinion, he does not discuss any specific medical findings made by Ms. Head in her treatment notes that are contrary to her findings in the form. Indeed, the medical findings in the treatment notes appear to support her opinion as they indicate that Plaintiff is depressed and anxious.  (*See e.g.* R. 160-61, 145-46, 141.)

The ALJ, however, believes that the treatment notes do not support Ms. Head's opinions because they reference the fact that Plaintiff cares for his children, gets his children ready for school, took a child to a doctor for an asthma attack, and taught a child to play a guitar.  (R. 25.)  He also stated that Plaintiff mentioned the possibility of vocational rehab and expressed a desire to work and "get out of the house"  (*Id.*)  The ALJ is improperly making credibility and/or lay judgments from these facts to discount the medical findings.  This is improper.

I also note that the ALJ discounted entirely the fact that Ms. Head completed another Colorado Department of Human Services Initial Examination form indicating similar limitations as in the form completed more than a year before.  (R. 261-262).  She indicated that Plaintiff's guarded prognosis and employability would only change if he had a marked decrease in mood swings, psychomotor agitation, anxiety, crying spells, and fear of public settings.  (*Id.*)  She also indicated he would need an increase in motivation, concentration, attention, and memory in order to be employable.  (*Id.*)  The ALJ's only basis for rejecting the opinions in this report was that it "does not contain new information" and "simply mimics the previous findings."  This was not a proper basis to

discount this opinion particularly given the significant treatment that Plaintiff had received from Ms. Head and others at SPMHC.[2]

The evidence of record also contains a Mental Impairment Questionnaire completed by Ms. Head and signed by Dr. McNabb, Plaintiff's treating psychiatrist at SPMHC. (R. 240-245). The questionnaire indicated that Plaintiff's signs and symptoms included: anhedonia or pervasive loss of interest in almost all activities; decreased energy; persistent anxiety; difficulty thinking or concentrating; psychomotor agitation or retardation; bipolar syndrome manifested by the full symptomatic picture of both manic and depressive syndromes; emotional lability; pressures of speech; and distractibility. (*Id*. 241.) In assessing functional limitation, the questionnaire indicated that Plaintiff had three episodes of decompensation within a twelve month period, each of at least two weeks duration. (*Id*. 244.)

In addressing the questionnaire, the ALJ stated:

> A Mental Impairment Questionnaire showing the claimant is significantly limited is also given little weight. It, like the other reports, was compiled by Ms. Head. Although a physician, Dr. McNabb apparently signed the form, there is no indication that he had any input in its compilation and, again, there are no treatment notes supporting a condition of the severity described.

(R. 25).

I first find that the ALJ did not properly articulate what weight was given to the questionnaire. The Tenth Circuit has stated that where an ALJ fails to articulate the weight given to an opinion, the court cannot meaningfully review the ALJ's

---

[2] While the Commissioner argues that an opinion on a "checked-box form especially a 'Med-9' form" is not entitled to special weight, that is not accurate particularly in light of the fact that Ms. Head had a treatment relationship with Plaintiff that lends support to her opinions in the form. *See Anderson v. Astrue*, No. 05-4305, 2009 WL 886237, at *6 (10th Cir. April 3, 2009).

-11-

determination. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *see also* SSR 96-2p, 1996 WL 374188, at *5 (1996) (the ALJ's decision must be sufficiently specific to make clear to any subsequent reviewer the weight that was given to the opinion). In *Robinson*, the court found error where "it [wa]s obvious from the ALJ's decision that he did not give [a doctor's] opinion controlling weight" but "the ALJ never expressly stated that he was not affording it controlling weight." *Id.* at 1083. Similarly, here while the ALJ indicated that the questionnaire was given "little weight" (R. 25), it is obvious that he gave no weight to the opinions therein. However, he did not make this clear. This was error under the above authority.

Second, I find that ALJ did not properly evaluate the questionnaire. The ALJ stated that the opinions in the questionnaire were entitled to "little" weight because of three invalid reasons: 1) Dr. McNabb had no input in its compilation; 2) it was authored by Ms. Head; and 3) there are no treatment notes supporting a condition of the severity described. I find error with these findings.

The Tenth Circuit has rejected the ALJ's first reason for not giving weight to the questionnaire. In *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002), the Tenth Circuit stated that an ALJ may not possess an unfounded doubt that a treating physician agrees with an assessment when he signs the assessment. It further stated, "[a]t the least, if the ALJ believed that the matter was open to question, he had an obligation under the applicable regulations to obtain additional information from [the treating physician] before rejecting the report outright." *Id.* Here, there was no reason for the ALJ to believe that Dr. McNabb did not agree with the questionnaire when he signed it. Thus, he was in error for rejecting the assessment on this basis.

Since Dr. McNabb signed the assessment, it must be assumed that he agreed with it given the ALJ's failure to contact him about this. The ALJ was required to give his assessment substantial weight as a treating psychiatrist unless good cause was shown to disregard it." *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994) (citing *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)). The ALJ clearly failed to do so in this case and thus committed legal error.

As to the ALJ's second reason for rejecting the questionnaire, he provides no explanation as to why Ms. Head's competency in completing the questionnaire should be questioned. As stated above, even as to providers that are not acceptable medical sources, the ALJ is required to consider their opinions and to provide specific, legitimate reasons for rejecting it. *Doyal*, 331 F.3d at 764. A proper evaluation of Ms. Head's assessment in the questionnaire is important since the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function". SSR 06-03p, 2006 WL 2329939, at *2-4 (2006). Indeed, assessments from nurse practitioners such as Ms. Head that are not acceptable medical sources may even at times outweigh the opinions of acceptable medical sources. *Id.* The ALJ erred in not properly considering Ms. Head's assessment.

The ALJ's final reason for rejecting the questionnaire, that "there are no treatment notes supporting a condition of the severity described", is unfounded. The record demonstrates Plaintiff's treatment for his mental impairments with SPMHC, where providers have consistently noted his multiple signs and symptoms of depression and anxiety and impairments related to same. (*See, e.g.*, R. 213-226.) Further, the Colorado Department of Human Services Initial Examination forms completed by

Ms. Head supported the severity of the findings in the questionnaire. In sum, the ALJ did not give valid or good reasons for rejection of the questionnaire.

I now turn to the evidence that the ALJ did rely on, and determine whether it contradicts the treating providers' assessments. As noted earlier, the ALJ relied on the evaluation of Dr. Benson for his RFC regarding Plaintiff's mental impairments. (R. 25.) Dr. Benson is a psychologist who Plaintiff asserts he saw at the request of his counselor at the Department of Social Services for vocational services.

Dr. Benson performed a psychological evaluation of Plaintiff. (R. 246-60). He assessed Plaintiff with a mood disorder, NOS; post traumatic stress disorder; cognitive disorder, NOS; alcohol abuse and probable dependence, in reported remission; obsessive/compulsive traits; a personality disorder, NOS; and prominent avoidant, anti-social, and borderline personality traits. (*Id.* 260.) He also stated that Plaintiff's "abilities fall at the Low Average to Borderline range with little variation." (*Id.* 257.)

Dr. Benson opined that Plaintiff had "such a combination of problems that it is not likely he could actively be successful in participating in the work world over the long term, especially in a full-time position." (R. 260.) He recommended that Plaintiff receive ongoing psychiatric and mental health treatment, substance abuse relapse prevention, and assistance in developing pain management techniques. (*Id.*)

The ALJ gave part of Dr. Benson's opinion some weight and other parts no weight. (R. 25.) While Dr. Benson concluded that Plaintiff would have a difficult time finding a "place in the work place", the ALJ believed this conclusion was based on the assumption that Plaintiff could perform no more than unskilled work at a light or sedentary level. (*Id.* at 24.) He stated that he agreed with this conclusion as reflected

in the RFC, but noted that there were jobs that Plaintiff could do within these parameters. (*Id.* at 24-25.) This appears to be the only portion of Dr. Benson's report that the ALJ gave weight to.

However, the ALJ's assumption about the basis of Dr. Benson's conclusion that Plaintiff would have a difficult time finding work is only partially accurate. The ALJ ignored the fact that Dr. Benson also stated that Plaintiff would have a hard time finding a job due to Plaintiff's "instability" and "criminal record." (R. 258.) These were not factored into the ALJ's RFC assessment, resulting in error. The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability. *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 n. 2 (10th Cir. Dec. 8, 2004). Further, an RFC assessment that includes only some limitations imposed by a physician and ignores others is deficient. *Confere v. Astrue*, No. 06-4217, 2007 WL 1196520, at *3 (10th Cir. April 24, 2007).

The ALJ also found a number of "inconsistencies in Dr. Benson's report which preclude it from being given controlling weight." (R. 25.) Indeed, it appears that the ALJ actually chose to give no weight to Dr. Benson's remaining opinions, including his opinion that Plaintiff cannot hold a job. The ALJ erred both in not stating what actual weight he gave to these opinions and in not assessing the appropriate factors in weighing these opinions. *See Goatcher*, 52 F.3d at 290; 20 C.F.R. §§ 404.1527(d)(2)-(6). Further, I find for the reasons discussed below that the ALJ's decision to reject the remaining opinions of Dr. Benson are not supported by substantial evidence.

To the extent that the ALJ rejected Dr. Benson's findings about Plaintiff not being able to hold a job due to memory and concentration problems because they were "self-

reported" (R. 25), this is error. "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements . . . . [t]he ALJ cannot reject [a medical provider's] opinion solely for the reason that it was based on [the claimant's] responses because such rejection impermissibly substitutes [the ALJ's] judgment for that of [the medical provider]." *Thomas v. Barnhart*, No. 04-7141, 2005 WL 2114163, at *4 (10th Cir. Sept. 2, 2005); *see also Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004). The record in this case does not support a finding that Dr. Benson's opinions were based on Plaintiff's subjective complaints alone. Instead, it appears that their opinions were based on his examination, assessment and testing of Plaintiff. *See Thomas*, 2005 WL 2114163, at *4 ("'a psychological opinion . . . 'may rest either on observed signs or on psychological tests.'") (quotation omitted).

Moreover, the ALJ's other reasons for not giving weight to the remainder of Dr. Benson's opinions, including his opinion that Plaintiff could not hold a job, were improperly based on lay opinions or judgments which were not sufficient to override the medical findings. For example, the ALJ disregarded Dr. Benson's detailed opinions and findings from the testing of Plaintiff based on the ALJ's judgment about what the tests reflected. (R. 25.) Further, he rejected Dr. Benson's opinion that Plaintiff would have difficulty interacting with others based on the fact that Plaintiff was the custodial parent of three children. (*Id.*) An ALJ is not entitled to reject a treating doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996)

The ALJ also ignored other specific findings by Dr. Benson about Plaintiff's mental impairments and how they would impact his ability to hold a job. For example,

the report of Dr. Benson lists a number of these issues at page 259 of the transcript. A medical provider's statements about a claimant's condition or impairments "are specific medical findings" which the ALJ errs in rejecting in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The ALJ's RFC assessment thus did not properly consider whether Plaintiff has the ability to hold a job full-time job given his mental impairments. *Id.* at 1442 ("'[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time'") (emphasis in original and quotation omitted). Dr. Benson's findings about Plaintiff's impairments clearly call into question the ALJ's finding that Plaintiff can perform a significant number of jobs, and the ALJ did not properly weigh this opinion. Thus, the RFC assessment is not supported by substantial evidence.

Notably, Dr. Benson's opinions regarding Plaintiff's ability to work due to his mental impairments support the opinions of treating nurse Ms. Head and also support the findings in the questionnaire completed by Ms. Head and signed by Plaintiff's treating psychiatrist. Indeed, the ALJ did not cite and I have not found any medical evidence in the record which indicates that Plaintiff is able to work from a mental impairment standpoint.

In sum, I find that the ALJ's RFC assessment is not supported by substantial evidence as to Plaintiff's physical and mental impairments. Accordingly, the ALJ's decision at step five is defective as it did not properly assess Plaintiff's impairments.

C.  The Appropriate Remedy

Given the above findings, I now must address whether to remand this case for further factfinding or to reverse outright and award benefits.  *See* 42 U.S.C. § 405(g) ("The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the case for a rehearing").  The Tenth Circuit has indicated that "'outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose.'" *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (quoting *Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988) (further quotations omitted)).  In other words, outright reversal is appropriate when "the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied." *Id.*

The record in this case fully supports a determination that Plaintiff cannot hold full-time employment due to his mental impairments.  Indeed, there does not appear to be any evidence to the contrary in the record.  Accordingly, I find that there is no need for further proceedings other than to remand for an award of benefits.  *Sisco,* 10 F.3d at 746.  This is particularly appropriate given the fact that this case was previously remanded to the ALJ by the Appeals Council in order for the ALJ to obtain a consultative examination as to Plaintiff's mental impairments.  He had the opportunity on that remand to obtain an examination that might have supported his finding that Plaintiff's mental impairments did not impact his ability to hold a job.  The ALJ chose to ignore the directive of the Appeals Council and thus did not obtain the evidence needed to support his findings.  The Commissioner is bound by the results of that decision.

Further, this case has a substantial history. Plaintiff has been seeking benefits since March 2005, almost five (5) years ago. The case was already remanded once by the Appeals Council to the ALJ and the ALJ did not comply with the Council's order of remand. In addition to ignoring the order to obtain a consultative examination, as noted above, the ALJ's decision did not properly evaluate Ms. Head's April 2006 questionnaire and did not support the RFC with specific evidence in the record, as directed by the Appeals Council. As noted in *Sisco*:

> The [Commissioner] is not entitled to adjudicate a case '*ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'

*Id*., 10 F.3d at 746 (quotation omitted). This also supports my decision that an outright reversal and award of benefits is appropriate.

IV.     CONCLUSION

In conclusion, it is

ORDERED that this case is **REVERSED**, and the case is **REMANDED** to the Commissioner for an immediate award of benefits to Plaintiff.

Dated March 26, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge